FIRST NATIONAL BANK OF PARIS, TEXAS, ET AL. v. LYON-GRAY LUMBER COMPANY ET AL.

No. 3135. Decided December 10, 1919.

(217 S. W., 133)

1.—Mechanics' Lien—Filing Claim with County Clerk.

One claiming for materials furnished a contractor for construction of a building is not entitled to recover personal judgment therefor against the owner of the building nor foreclosure of a lien against the property unless he has filed an itemized account of his claim with the county clerk as re-

quired by the statute (Rev. Stats., arts. 5623, 5635, 5637). And this is true though he has given to such owner written notice of the items and amounts of his claim as required before such owner settled with the contractor. Berry v. McAdams, 93 Texas, 434, approved and followed. (Pp. 171-173).

2.—Same—Cases Discussed.

The statutes providing how the lien given by the Constitution may be secured (Const. art. 16, sec. 37; Rev. Stats., arts. 5623, 5635, 5637) create prerequisites to the enforcement of the materialman's claim against the owner, reasonable and within the power of the Legislature to impose; and these relate to the owner's personal liability and the lien on his property as well as to the enforcement of the lien against subsequent purchasers or lien holders, Beilharz v. Illingsworth, 62 Texas Civ. App., 647: Texas Builders' Supply Co. v. Beaumont Const. Co., 150 S. W., 772; Seeling v. Alamo Iron Works. 173 S. W., 522 are disapproved. Nichols v. Dixon, 99 Texas, 263; Bullard v. Norton, 107 Texas, 576; Texas Glass & Paint Co. v. Crowdus, 108 Texas, 351, approved and followed. (Pp. 172, 173).

3.—Mechanics' Lien—Payment after Notice of Claim—Abandonment of Contract.

The statute being complied with by a claimant of a lien for building materials furnished a contractor, the owner, after receiving written notice of the claim, paid out to the contractor on architect's estimates as the work progressed sums in excess of the lien claimed. Subsequently the contractor abandoned his contract and the owner. as authorized thereby, had the work completed at a cost which left the contractor greatly overpaid for the work done by him. Held that this did not relieve the owner from liability to the materialman, who was properly given personal judgment against the owner for the amount of his claim and foreclosure on the property. Fullenwider v. Longmoor, 73 Texas, 484; Nichols v. Dixon, 99 Texas, 268, followed. (P. 173).

4.—Mechanics' Lien—Notice.

The rights of claimants to mechanics' liens for materials furnished to a contractor depend on their own compliance with statutory requirements, They can claim nothing for payments made the contractor before they gave the owner the required written notice, though made after such notice by other claimants This did not enure to their benefit. (P. 174).

5.—Construction Contract—Agency.

A clause in an agreement for the erection of a building between contractor and owner, that the owner " employs" the contractor "to provide the materials and to do the said work according to the terms and conditions herein contained and referred to and for the price aforesaid " did not change the relation of owner and building contractor apparent from the entire contract into one of mere principal and agent making the owner liable personally and apart from the law govering mechanics' liens upon purchases by the contractor of materials used in the construction. (P. 175).

6.—Mechanics' Lien—Building Contract—Failure to Complete.

When served with notice of a materialman's lien the owner became liable to such claimant if he made subsequent payments to the contractor, irrespective of what he might ultimately owe him. But otherwise as to a part of the contract price which, under the terms of the contract, he was retaining in his hands to await full completion of the work. This reserved fund, where the contractor abandoned the work, and the owner, entitled so to do, under the contract, completed the construction at a cost which, with payments already made, exceeded the contract price, never became money due the contractor which could be subjected to the lien. (Pp. 175, 176).

7.—Same—Modification of Contract.

Where by modification of the contract between owner and contractor part of the contract price reserved and to come due only on final completion was expended by the owner in furnishing labor and material to the contractor, diminishing thereby the amount due him, the sums so expended by the owner never became money due from him to the contractor and were not reached by a later notice of the claim of one furnishing materials to the contractor.    (P. 176).

8.—Mechanics' Lien—Reserving Title to Materials Furnished.

Reservation of title by a seller of chattels until same are paid for is in effect a chattel mortgage and void unless registered. Where in sale of elevators for a building to the contractor erecting it, reservation of title by the sellers was not registered until after the owner of the building had become a bonafide purchaser of same, which had then become attached to the realty, by paying the contractor therefor on architect's estimates including them, no lien or right thereto remained in the seller.    (P. 176).

Error to the Court of Civil Appeals for the Sixth District, in an appeal from Lamar County.

The suit was originally brought by Lyon-Gray Lumber Co. against John T. Finn and the First Natl. Bk. of Paris, to enforce a lien for material furnished Finn who had contracted to erect a building for the bank. Other claimants of liens: H. S. Bettes Hdw. Co; Christopher & Simpson Iron Works Co; W. F. Dulaney & Sons; Ingram Millwork Co.; Atlanta Terra Cotta Co.; Electric Appliance Co.; Gilbert Mfg. Co.; Texas Power & Light Co.; Otis Elevator Co.; Texas Glass & Paint Co.; Trussed Concrete & Steel Co.; Wichita Falls Brick & Tile Co.; and Lecouteur Bros. Stair Mfg. Co., and various others whose claims are not here involved, intervened or were impleaded. Plaintiff and the four first-named intervenors had judgment for their claims in whole or in part, with foreclosure of liens, and the Bank had judgment over against the Guaranty Co. The remaining interveners were denied recovery. Appeals were perfected by the Guaranty Co., the Bank, and each of the unsuccessful interveners. As to all the latter the judgment against them was affirmed, as also was that in favor of the Lumber Co., Dulaney & Sons, and the Iron Works Co., while those in favor of the Hardware Co. and Ingram were reversed and judgment rendered against them.   194 S. W., 1146.

Writs of error were thereupon obtained on joint application therefor by the Texas Glass & Paint Co., Atlanta Terra Cotta Co., Gilbert Mfg. Co., and Electric Appliance Co.  Also on joint application of Christopher & Simpson Iron Works Co. and of W. F. Dulaney & Sons.  Also on separate applications of United States Fidelity & Guaranty Co.; of Otis Elevator Co.; of Ingram Mill Work Co.; and of Lecouteur Bros. Stair Mfg. Co. The last-named writ of error was disposed of by a separate opinion.  See Lecouteur Bros. Stair Mfg. Co. v. Lyons-Gray Lumber Co., in case next following.  All

the other writs of error are here disposed of together under the style which the case bore in the Court of Civil Appeals.

The questions raised by the application for writ of error of the United States Fidelity & Guaranty Co. were disposed of adversely to it by the opinion of the Court of Civil Appeals and are apparently covered by the approval of that disposition of the case without discussion in the present opinion.

*Hunt, Myer & Teagle and Seay & Seay,* for plaintiff in error United States Fidelity & Guaranty Co. of Baltimore, Md.—The proceeding prescribed by the statute by which a materialman is permitted to fix a lien for material furnished by him and used in the erection of improvements does not create a debt against the owner of property, but operates as a writ of garnishment would and appropriates so much of the money in the hands of the owner as is then due and payable or may become due and payable to the contractor to the extent necessary to satisfy that claim. The owner of the property is liable to the materialmen only as he (the owner) would be liable to the contractor.

The owner is entitled to have his building completed at its contract price, and the filing of notices with the owner by the materialmen can have no other effect than to impound the funds in the hands of the owner such as by writ of garnishment of such an amount as may be due to contractor from the owner after said contractor has completed and delivered to the owner the character of building contracted for. Where the contract price entered into by the owner of the building, including labor and material, was $122,493.04, and the owner was required to pay $137,473.72 for labor and material which went into said building, there was no process under our statutes by which a materialman could create a lien upon the property of the owner, or a personal liability for the same. Vernon's Civil Statutes, art. 5623, 5637; Acts of 1915, p. 223; Lonergan v. San Antonio Land & Trust Co., 104 S. W., 1061; Fullenwider v. Longmoor, 11 S. W., 500; Slade v. Amarillo Lumber Co., 93 S. W., 475; Pool v. Sanford, 52 Texas, 621; Riter v. Houston Oil & Refining Co., 48 S. W., 758; Falls v. Nichols, 97 S. W., 145; Timmons v. Casey, 47 S. W., 805.

Authorities as to Assignment: First National Bank of Paris v. O'Neil Eng. Co., 176 S. W., 74; County of Harris v. Campbell, 68 Texas, 22, Prairie National Bank v. United States, 164 U. S., 227; Hannaway v. National Surety Co., 211 U. S., 552, Henningsen v. Fidelity & Guaranty Co., 208 U. S., 404; Seattle Bank v. Philadelphia Bank, 52 C. C. A. 313.

Where the cost of the completion of a building exceeds the contract price there cannot be any lien created upon the building and premises, and where in such case the bond indemnifies the owner only against

the liens that can be enforced upon his property, there can be no recovery against the surety on such bond. As we understand the law, the courts have held in Lonergan v. San Antonio Land & Trust Company, 104 S. W., 1061; Fullenwider v. Longmoor, 73 Texas, 480; Slade v. Amarillo Lumber Co. 93 S. W., 475; Timmons v. Casey, 47 S. W., 805; Falls v. Nichols, 97 S. W., 145; Riter v. Houston Oil & Refining Company, 48 S. W., 758, and Pool v. Sanford, 52 Texas, 612, that these articles mean what they say, and that the owner cannot be required to pay more than the contract price.

*Higgins & Kayser,* and *Ike A. Wynn,* for plaintiff in error Ingram Mill Work Co.—The lien given by art. 16, sec. 37, of the Constitution includes materialmen who furnish material to the contractor. Bassett v. Mills, 89 Texas, 162.

Art. 16, sec. 37, of the Constitution is self executing, and of itself vested in plaintiff in error a lien which was not lost by the failure to file an account in the office of the county clerk. Bielharz v. Illingsworth, 62 Texas Civ. App., 643; 62 Texas Civ. App., 647; Texas Builders' Supply Co. v. Beaumont Constr. Co., 150 S. W., 770; Strang v. Pray, 89 Texas, 525; Bank v. Taylor, 91 Texas, 78.

The filing of the account with the county clerk was intended by the Legislature as a matter of registration, to serve as constructive notice to a purchaser from the owner who built the improvement, and not as constructive notice to the latter, who acts upon a notice in writing from the materialman. Berry v. McAdams, 93 Texas, 436, and authorities cited under the preceding proposition.

The Ingram Millwork Company, being a materialman and having furnished material of the value of three thousand, seven hundred ninety and 07/100 dollars ($3,790.07) to the contractor, for use in and which was used in the bank's building, and having given the bank notice as required by law of its claim while there were funds in its hands owing to said contractor, said claimant's lien given by the Constitution was preserved, and so much of the funds in the bank's hands, owing to said contractor, as was necessary to pay the claim were impounded, and said bank paying to said contractor, after the notice was given, more than the amount of said claim, became personally liable to claimant, and the judgment of the court in favor of claimant against the First National Bank, for its debt and foreclosure of its lien, was proper. Sec. 37, art. 16, Constitution of Texas; Art. 5623, Vernon-Sayles Revised Statutes; Strang v. Pray, 89 Texas, 525; F. & M. Bank v. Taylor, 40 S. W., 877; Beilharz v. Illingsworth, 132 S. W., 106; Seeling v. Alamo Iron Works, 173 S. W., 520; Nichols v. Dixon, 99 Texas, 263; Johnson v. Amarillo Imp. Co., 88 Texas, 511; Dudley v. Jones, 77 Texas, 69; Wilkerson v. McMurray, 167 S. W., 275; Wilson v. Sherwin-Williams Paint Co., 160 S. W., 418; Baumgartner v. Mauer, 60 S. W., 451; Bassett v. Mills,

89 Texas, 162. We think there is little doubt now, in the minds of anyone, that this constitutional lien exists, regardless of any statutes passed by the Legislature, and that the lien does not depend upon the statute, and that the Legislature has no power to affix to that lien conditions of forfeiture, as said in the case of Bank v. Taylor, *supra,* and also in the case of Strang v. Pray, *supra.* By these authorities the lien extends also to so much of the land as is necessary to the enjoyment of the buildings.

*Burdett, Connor & Dailey,* for plaintiffs in error Christopher & Simpson Iron Works Co. and W. F. Dulaney & Sons.—The Constitution of Texas, by art. 16. sec. 37, gives to all materialmen a lien upon the buildings in which their materials are used for the value of the materials furnished by them therefor, and such right to lien, being fixed by the Constitution, cannot be abridged or diminished by statutory enactment; hence that part of art. 5623, Rev. Stats, which provides that in no case shall the owner be compelled to pay a greater sum for material than the price stipulated in the contract between the owner and the original contractor is unconstitutional · and void. Art. 16, sec. 37, Constitution of Texas; Art. 5623, Revised Statutes of Texas; Beilharz v. Illingsworth, 132 S. W., 106; Strang v. Pray, 89 Texas, 525; Texas Glass & Paint Co. v. Southwestern Iron Co., 147 S. W., 620; Bank v. Taylor, 91 Texas, 78; Texas Builders Supply Co. v. Beaumont Const. Co., 150 S. W., 770; Johnson v. Amarillo Imp. Co., 88 Texas, 505; Bassett v. Mills, 89 Texas, 162; Blakeney v. Nalle, 101 S. W., 875.

When the Lyon-Gray Lumber Company served its notices upon the bank such act had the effect in law to impound whatever sum the bank then owed to Finn under its contract, and whatever sums might subsequently become due to him, for the use and benefit, not only of itself, but of all such laborers and materialmen as might in the manner and time required by the statute fix a similar lien upon such sum for the value of their material and labor. There is no race of diligence between lienholders under our mechanic's lien statute, but it is provided by art. 5637 that "The liens for work and labor done or material furnished, as provided in this chapter, shall be upon an equal footing, without reference to date of filing the account or lien." Rev. Stats, arts. 5621, 5622, 5623, 5632, 5637; Beilharz v. Illingsworth, 132 S. W., 106; Wood v. Amarillo Imp. Co., 31 S. W., 503. As to liability of owner, generally: Lonergan v. Trust Co., 101 Texas, 79; Fullenwider v. Longmoor, 73 Texas, 480.

*Wright & Patrick,* and *Crane & Crane,* for plaintiffs in error Texas Glass & Paint Co., Atlanta Terra Cotta Co., Gilbert Mfg. Co., and Electric Appliance Co.—The provisions in the building contract, especially the provision that "the said owner (the First National

Bank of Paris) hereby promises and agrees with the said contractor (J. T. Finn), to employ, and does hereby employ him to provide the materials and to do the said work according to the terms and conditions herein contained and referred to for the price aforesaid, and hereby contracts to pay the same at all times, in the manner and upon the conditions above set forth," constituted J. T. Finn the agent of the Bank, and the purchase by the said Finn of the materials from appellants was a purchase by the said Bank, and appellants were, therefore, entitled to a judgment against the latter for the amount of their respective debts, with a foreclosure of their mechanics and materialman's liens upon the land and the improvements thereon of the Bank. Steele v. McBurney, 65 S. W., 332.

The undisputed evidence being that appellants, furnished material used in the construction of the improvements placed upon the land of the Bank, and which had not been paid, under art. 16, sec. 37 of the Constitution, each of appellants has a lien upon the improvements and the land upon which they are situated, and the court, therefore, erred in adjudging that appellants had no lien. Constitution of Texas, art. 16, sec. 37; Strang v. Pray, 89 Texas, 527; F. & M. Bank v. Taylor, 91 Texas, 80; Meyers v. Wood, 95 Texas, 71.

The court having found that by reason of notices served upon the Bank by Lyon-Gray Lumber Company, E. B. Ingraham, H. S. Bettes Hardware Company, W. E. Dulany & Sons, and Christopher & Simpson Iron Works, the Bank should have withheld the sum of $17,702.50, which was paid out by the Bank after the receipts of the notices aforesaid, appellants were each entitled to their *pro rata* part of said sum, and the court, therefore, erred in not adjudging that appellants should recover their *pro rata* shares thereof with foreclosure of their liens to the extent thereof. Rev. Stats., 1911, arts. 5621-5639.

Under an agreement made on or about November 15. 1914, between the Bank, Finn, and the Bonding Company, the provisions in said contract in reference to payments were modified by an agreement between the Bank, Finn, and the Bonding Company authorizing the former to make payments out of the 20 per cent reserved for labor and material used in the construction of the bank building. Plaintiff in error gave written notices to the Bank of the items furnished Finn, and the values thereof used in the construction, and after the receipt of said notice, and before said J. T. Finn abandoned his contract on February 9, 1915, the Bank paid out under said contract as modified the sum of $12,884.95, and made no provision for the payment of the debt of Electric Appliance Company. By making the payments aforesaid after receipt of appellant's notice, the Bank became personally liable to the appellant for the amount of its debt, and its property because subject to a lien in favor of appellant to the extent of said indebtedness. Nancolas v. Hetaffee

(Iowa), 112 N. W., 382; Cement Co. .v. Coal Co., 144 N. Y. Supp., 519: Walsh v. McMenomy, 74 Cal., 356; Hurdley v. Wadsworth, 38 Cal., 356; Shaver v. Murdock, 36 Cal., 293, 298; Prescott v. Maxwell, 48 Ill., 82.

*John Charles Harris* (*Harris & Harris* of counsel), for plaintiff in error Otis Elevator Co.

A contract of sale such as the Otis Elevator Company, made in this case with the general contractor Finn, is valid on the instant of its execution, regardless of its registration, as to all parties except lien creditors, subsequent mortgagees and *bona-fide* purchasers. Article 5654, Vernon's Sayles' Texas Civ. Stat.; Scott v. Cox, 70 S. W., 805: Keller v. Smalley, 63 Texas, 519; Overstreet v. Manning, 67 Texas, 663; Grace v. Wade, 45 Texas, 527; Hall v. Keating, 77 S. W., 1056; Bowen v. Lansing, 91 Texas, 385; Henderson v. Mahoney, 72 S. W., 1019; Singer v. Rios, 71 S. W., 275.

By agreement between the owner of personal property and the owner of realty, made before annexation, the personal property may be made to retain its *status* after annexation and an enforceable right to remove it may be conferred upon the owner of the personal property. Hutchinson v. Masterson, 46 Texas, 554; Moody v. Aiken, 50 Texas, 74; Furrh v. Winston, 66 Texas, 526; Harkey v. Cain, 69 Texas, 150; 19 Cyc., 1048.

The questions involved in the case at bar are fully decided by the statute law of this State on the reservation of title, as set forth in article 5654, Vernon's Sayles' Texas Civil Statutes, and the following decisions of. the courts: Scott v. Cox, 70 S. W., 805; Keller v. Smalley, 63 Texas, 519; Overstreet v. Manning, 67 Texas, 663; Grace v. Wade, 45 Texas, 527; Hall v. Keating, 77 S. W., 1056; Bowen v. Lansing, 91 Texas, 385; Henderson v. Mahoney, 72 S. W., 1019; Singer v. Rios, 71 S. W., 275.

*Long & Wortham,* and *A. P. Park,* for defendant in error First National Bank of Paris.

The owner is entitled to have his building completed at its contract price, and the filing of notices with the owner by the materialmen can have no other effect than to impound the funds in the hands of the owner such as by writ of garnishment of such an amount as may be due the contractor from the owner after said contractor has completed and delivered to the owner the character of building contracted for the amount in the said contract stipulated; and where a contract required the payment to the contractor a certain per cent upon estimates of the amount of work, which was so paid, and where the contractor was unable to complete the building for the owner at the contract price, and the owner was required, as per the terms of the contract, to take charge of same and did so

and completed the same at a cost of $14,979,68 in excess of the contract price, then under such circumstances there was never any amount due said contractor by the owner and hence no funds to be impounded, nor could any lien or liability be established by the filing of notices either against the premises of the owner or the owner himself. Vernon's Civil Statutes, article 5623, 5637; Acts of 1915, p. 23; Lonergan v. San Antonio Land & Trust Co., 104 S. W., 1601; Fullenwider v. Longmoor, 11 S. W., 500; Slade v. Amarillo Lumber Co., 93 S. W., 475; Texas Constitution, art. 1, sec. 16; United States Constitution, art. 1, sec. 10; Pool v. Sanford, 52 Texas, 621; Riter v. Houston Oil & Refining Co., 48 S. W., 758; Falls v. Nichols, 97 S. W., 145; Timmons v. Casey, 47 S. W., 805; Baumgarten v. Mauer, 60 S. W., 451.

A materialman's lien does not exist unless filed in county clerk's office, as required by law. United States & Mex. Trust Co. v. Western Supply Co., 109 S. W., 377; Berry v. McAdams, 55 S. W., 1112; Gilmer v. Wells, 43 S. W., 1058.

The elevators having been furnished the contractor, Finn, to be incorporated in the bank building, when so incorporated became a part thereof, and the bank, not being a party to the contract between Finn and the Elevator Company and having no notice of the Company's lien or reservation of lien before the annexation, acquired title to the elevators free of all liens. Peck-Hammond Co. v. Walnut Ridge District, 123 S. W., 771; Allis-Chalmers Co. v. City of Atlanta, 52 L. R. A., (N. S.) 561, where will be found a complete discussion of the question at issue.

*Head, Dillard, Smith, Maxey & Head,* for defendant in error Lyon-Gray Lumber Co.—Lyon-Gray Lumber Co. took every step requisite to the fixing of a lien on the bank building and lots on which it is situated, and by such steps did fix a mechanic's or materialman's lien thereon. Rev. Stats. arts. 5623, 5625, 5627, 5636; Bank v. Taylor, 91 Texas, 81; Seeling v. Alamo Iron Works, 173 S. W., 520; Beilharz v. Illingsworth, 132 S. W., 106; Nichols v. Dickson, 99 Texas, 263; Texas Builders' Supply Co. v. Beaumont Construction Co., 150 S. W., 770.

The service of the notices on the bank not only fixed, or, in any event, was a step in fixing, the lien upon the building and lots upon which it is situated, but impounded, or fixed a *quasi* lien on, the funds owing by the bank to Finn; and if, disregardful of such notices, the bank paid the money to Finn, it rendered itself liable to a personal judgment, as well as to foreclosure of the lien. Nor would the fact that Finn may have paid out a part of the money, or, indeed, all of it, on labor claims, relieve the bank of this personal liability or discharge the lien. Lonergan v. Trust Co., 101 Texas, 63; Wilson v. Sherwin-Williams Paint Co., 160 S.

W., 418; Wilkerson v. McMurray, 167 S. W., 275; Johnson v. Amarillo Imp. Co., 88 Texas, 505; Fullenwider & Co. v. Longmoor, 73 Texas, 480; Padgitt v. Construction Co., 92 Texas. 626; Baumgarten v. Mauer, 60 S. W., 451; Rice Common School Dist. No. 2 v. Oil City Iron Works, 180 S. W., 1121; Dudley v. Jones,. 77 Texas, 69.

The order given by Finn on the bank constituted an assignment to it of funds therein called for to the amount of the order, and was in no respect a waiver of the mechanic's lien. Johnson v. Amarillo Imp. Co., 88 Texas, 505; Beilharz v. Illingsworth, 132 S. W., 106; Rice Common School Dist. No. 2 v. Oil City Iron Works, 180 S. W., 1121; National Bank of Denison v. Coleman, 151 S. W., 1123; Fielder Lumber Co. v. Smith, 151 S. W., 605; Bank v. Taylor, 91 Texas, 78; Harris Co. v. Campbell, 68 Texas, 22; Youngberry v. Brick Co., 155 S. W., 715.

Mr. JUSTICE GREENWOOD delivered the opinion of the court.

The various controversies between the parties hereto relate to a contract, of date February 18. 1914, whereby J. T. Finn, a contractor, became bound to construct a building, at Paris, for the First National Bank of Paris, furnishing necessary material and labor. for which the Bank agreed to pay $122,493.04, including additions and extras.

The Ingram Millwork Company furnished the contractor certain material for the building and duly served the Bank with notice of the items furnished, and of the amounts due and unpaid therefor, but failed to file an itemized account of its claim in the office of the county clerk of Lamar County.

On the foregoing facts, the Court of Civil Appeals reversed that portion of the judgment of the District Court which awarded to the Ingram Mill Work Company a personal judgment, for the amount of its claim, against the Bank, with foreclosure of mechanic's lien on the Bank's building and the lots whereon it is situated.

In our opinion, the action of the Court of Civil Appeals was correct. Such action was in accordance with the decision in Berry v. McAdams, 93 Texas, 434, 55 S. W., 1112, wherein McAdams furnished material to contractor Berry, which he wrought into a house on lots, of which Housewright, Swayze & Co., were the beneficial owners, in accordance with a contract between Berry and Housewright, Swayze & Co. Verbal notice was given by McAdams to Housewright, Swayze & Co. of the material furnished and of the account therefor, before Housewright, Swayze & Co. had settled with Berry, but McAdams failed to give any written notice, as required by statute, until Berry had received all the compensation to which he was entitled under the contract. The substance of the questions

certified by the Court of Civil Appeals was did McAdams have a lien, created by the Constitution, which could be enforced, against the owners and their property, notwithstanding the failure, by McAdams, to comply with the statutes? The Supreme Court answered: "The validity of McAdams' lien against the property of Housewright, Swayze & Co. depends upon his compliance with the requirements of the statutes enacted in pursuance of the Constitution of this State. . . . . Assuming, . . . for the purpose of this case, that the Constitution does give a lien in favor of the class of persons to which the appellee belongs, it, at the same time, requires of the Legislature to enact laws for the enforcement of such liens, which has been done, and we hold that the laws above referred to are within the powers of the Legislature over the subject, and that a failure by the appellee to comply with their requirements defeats his lien claimed under the Constitution. In other words, it is a reasonable and just regulation for the efficient enforcement of the lien of the materialman which he must comply with in order to avail himself of the benefits of the provisions of the Constitution. There being valid laws upon the subject, the question what would be appellee's rights if there were no such statute cannot arise." 93 Texas, 435, 437.

Articles 5623, 5635 and 5637 clearly express the legislative intent to make the filing of an itemized account, as well as written notice, a prerequisite to the enforcement of a debt, incurred by a contractor or sub-contractor with a materialman, as against the owner or his property. Because the Ingram Millwork Company did not file any account or claim whatsoever in the county clerk's office, as required by this valid provision of the statutes, it failed to establish the right to enforce its claim against the Bank or its building and lots.

It would defeat the purpose expressed by the words of the law to say that the liability of the owner, or a lien on his property, might be enforced, without the filing of the required itemized account.

The statutes are dealing with the owner's personal liability and a lien on the owner's property, when the filing of accounts is prescribed, and not with the mere enforcement of liens as against subsequent purchasers or lien-holders, and we do not approve of the expressions in the opinions of the Courts of Civil Appeals, in Beilharz v. Illingsworth, 62 Texas Civ. App., 647, 132 S. W., 109, Texas Builders' Supply Co. v. Beaumont Const. Co., 150 S. W., 772, and Seeling v. Alamo Iron Works, 173 S. W., 522, to the effect that only subsequent purchasers may prevent the enforcement of a lien by reason of the failure of a materialman to file the required itemized account in the office of the county clerk.

Nichols v. Dixon, 99 Texas, 263, 89 S. W., 765; Bullard v. Norton, 107 Texas, 576, 182 S. W., 668, and Texas Glass & Paint Co. v. Crowdus, 108 Texas, 351, 193 S. W., 1072, recognize compliance with the statutes to be indispensable to establish the right of the material-man to enforce his account for material furnished the contractor, as against the owner or his property.

The Lyon-Gray Lumber Company recovered a personal judgment against the Bank for the full amount of its debt for material furnished the contractor, with foreclosure of lien on the Bank's building and lots, and the Court of Civil Appeals declined to disturb the judgment in favor of the Lumber Company.

The items of material furnished the Bank at various dates from March 1, 1914, to Nov. 9, 1914, amounted in price to $12,433.98, besides interest. As the items were delivered, written notices were given to the Bank by the Lumber Company, and, on January 28, 1915, an itemized and verified account of its claim was duly filed by the Lumber Company in the office of the county clerk of Lamar County. The Bank paid the contractor, on estimates of the architect on work in performance of the building contract, from March 28, 1914 to December 30, 1914, the sum of $97,785.13.

It is not denied that the Bank paid the contractor amounts far in excess of the Lumber Company's claim, after being properly served with written notice, nor that the Lumber Company complied with every statutory requirement for fixing a materialman's lien. But, it is contended by the Bank and the surety on a bond given by the contractor to secure the performance of his contract that since the contractor abandoned his contract, on February 9, 1915, and the Bank had to complete the building at a cost of over $14,000 in excess of the contract price, the Lumber Company was not entitled to either a personal judgment or foreclosure of lien.

This contention cannot be sustained. To sustain same would mean for us to announce a rule, which would necessarily result in either licensing the contractor to himself retain monies in defiance of those having a declared better right to them, or at least to prefer parties, regardless of their compliance with what the statutes prescribe as essential conditions of preference. As applied to the facts of this case, should we sustain the Bank's and the surety's contention, and even assume that all of the monies paid the contractor went for labor and material for the building, though such assumption is not supported by the record, then we would uphold the preference of those who had taken no steps to get priority over, or even equality with, a claimant, who had done all things required by law to gain priority.

The decree, as to the Lumber Company, simply enforces the statutes, as they have heretofore been uniformly construed. Fullenwider v. Longmoor, 73 Texas, 484, 11 S. W., 500; Nichols v. Dixon, 99

Texas, 268, 89 S. W., 65; Lonergan v. San Antonio Trust Co., 101 Texas, 63, 129 Am. St., 803, 22 L. R. A., (N. S.), 364, 104 S. W., 1061, 106 S. W., 876.

After Dulaney & Sons and Christopher & Simpson Iron Works gave notice to the Bank of claims for material furnished by them to the contractor for the building, the amount paid by the Bank to the contractor was $1177.50, and the District Court and Court of Civil Appeals limited their recoveries to the sum of $1177.50, which was distributed between Dulaney & Sons and Christopher & Simpson Iron Works, who complain that their claims ought to have been paid in full, by reason of the notice given by the Lyon-Gray Lumber Company enuring to their benefit.

We consider this complaint without merit. The rights of complainants depend upon their compliance with statutory requirements, unaided by the diligence of the Lyon-Gray Lumber Company.

In Dudley v. Jones, 77 Texas, 70, the Court said: "The owners of the property were not liable to the sub-contractor for any amount paid to the contractor before being served with notice of the sub-contractor's claim. By establishing his claim as a mechanic's lien, the sub-contractor's right related back to the date of his notice to the owners and became a lien upon the property for any amount then due or subsequently accruing in favor of the contractors, not exceeding the sub-contractor's demand, there being no other mechanic's lien against the property." What the Court said in Dudley v. Jones, with respect to the owner's liability to a sub-contractor not exceeding the amount due the contractor at the date of notice of the sub-contractor's claim, or subsequently, is equally true of the owner's liability for material furnished a contractor.

As to Dulaney & Sons and Christopher & Simpson Iron Works, all payments made by the Bank, prior to the service of their notices, were lawful, and hence could not be the basis of liability or lien in their behalf.

The Texas Glass & Paint Company, Atlanta Terra Cotta Company, Gilbert Manufacturing Company, and Electric Appliance Company assign that it was error to deny them any recovery herein for the following reasons:

First: That each of them has an unpaid account for material furnished Finn not as contractor but as agent for the Bank.

Second: That each of them has a lien on the Bank's building and lots for material furnished the contractor, regardless of the state of accounts between the owner and contractor when each gave notice of its claim to the owner; and, that each of them is entitled to participate in the distribution of the fund impounded by the notices of the Lyon-Gray Lumber Company and others, although no monies would have been impounded by notices given as late as the dates of their own notices.

Third: That the Bank became personally liable for the debt of each of them and its property became subject to a lien for the amount thereof, because the Bank paid out over twelve thousand dollars under the building contract, after service of written notice of the claim of each of them.

The building contract provided that the sum promised the contractor should be paid in installments as follows: 80 per cent. of all labor and materials incorporated in the building, upon estimates of the architect, on the first and fifteenth days of each month, and 20 per cent. after the contract was completely finished, on certificate of the architect that the work had been properly done, and on sufficient evidence that the premises were free of liens and claims chargeable to the contractor. The contract also authorized the owner to complete the building, on its abandonment by the contractor, furnishing all necessary labor and material, in which event the contractor should receive no further payment until the work was finished, at which time he should receive no more than the excess of the unpaid balance over the expense of completion of the work.

After the Bank had paid the contractor $97,785.13, on architect's estimates, the contractor, his surety and the Bank agreed, on or about Nov. 15, 1914, that the Bank might make payments for labor and material, out of the 20 per cent. reserved, and the Bank made such payments to the aggregate amount of $18,637.27, and some $12,000 of this sum was disbursed after the Bank was served with notices of the accounts of the Texas Glass & Paint Company and associate claimants, who furnished material to the contractor, after Nov. 15, 1914, and who duly filed itemized, verified claims in the office of the county clerk.

A single paragraph of the contract is so worded as to support the claim that Finn acted as the Bank's agent in the purchase of these materials, but the contract as a whole does not reasonably admit of such an interpretation.

It follows from conclusions already announced that no lien can be enforced on the Bank's property by these claimants, in the absence of compliance with the statutory requirements, and that their rights against the owner or his property, must be determined in the light of the owner's obligations at the date of service by these claimants of their written notices, and not at the date of service of notice by other creditors.

The case of Lonergan v. Trust Co., 101 Texas, 80, 129 Am. St., 83, 22 L. R. A. (N. S.), 364, 104 S. W., 1001, 106 S. W., 876, is decisive against the contention that the Bank became personally liable, or that its property became charged with a lien, by reason of the payments for material out of the 20 per cent. reserve fund, unless such lability or lien can be predicated on the fact that such payments were made before and not after the contractor's aban-

donment of the contract. For Lonergan's case is conclusive that the 20 per cent. reserve fund could not be considered, in determining the liability of the owner or the acquisition of a lien, where it was required to complete the building; for, in that event, the contractor never could become entitled to any part thereof.

We do not think that any different effect should be given to the use made of the reserve fund, under the modification of the building contract, than if said fund had been entirely used to complete the building, after Finn's abandonment of the contract. The effect of the modification of the contract, before the rights of these claimants accrued, was simply to require the owner to furnish part of the required labor and material, and to diminish by the cost of same the amount due the contractor. In no event did Finn ever become entitled to receive, nor did he receive, any payment from the owner, after notices were given of these claimants' debts, and that is enough to require that they be denied the relief sought by them.

The Otis Elevator Company sought to enforce a lien upon two passenger elevators, which it sold contractor Finn, under a contract, whereby payment of the purchase price of $7000 was secured by a reservation of title in the Company. Jno. T. Finn installed the elevators in the building constructed by him for the Bank, having attached them to the building so as to become a part of the realty on February 9, 1915, and the elevators had been included in the estimates of material and labor which had gone into the building, on which payments of eighty per cent. had been made by the Bank, prior to said date. The contract of sale was not recorded until March 31, 1915, and then the Bank had its first knowledge of any reservation of title by the Elevator Company.

Our statute gave to the reservation of title to the elevators the effect of a chattel mortgage lien, which was void as to the Bank, because it was not registered until subsequent to February 9, 1915, and, by that date, the Bank had plainly become a *bona-fide* subsequent purchaser. Bowen v. Wagon Works, 91 Texas, 390, 391, 43 S. W., 872. The reservation of ownership being void as to the Bank, its title to the elevators could not be affected nor divested through an enforcement of the lien created by such reservation, and hence there was no error in refusing to enforce such lien against the Bank.

We have not thought it necessary to discuss all the assignments of the numerous plaintiffs in error, but think none well taken, and hence the judgment of the Court of Civil Appeals is affirmed.

*Affirmed.*